The next case today is Maria Alejandra Salimen Savino et al. v. Steven J. Souza, appeal number 20-1626, and Inres Ares de Greca et al., number 20-2117. Ms. Quigley, please introduce yourself on the record and proceed with your argument. May it please the court, Katie Quigley on behalf of Petitioner Appellants. I am a law student at Harvard Law School here with co-counsel Samir Ahmed. I will be addressing the jurisdictional issue for the direct appeal and Mr. Ahmed will be addressing the other issues in this case, and he will reserve two minutes for rebuttal. Fine. Proceed. Your Honors, this appeal is about whether our clients should be released on bail because the district court found that they are likely to succeed on the merits of their habeas claim, the government has been deliberately indifferent to the substantial risk of serious harm that our clients face while detained at the Bristol County House of Corrections during the COVID-19 pandemic. And to begin, this court clearly has jurisdiction to hear the appeal, as nearly every circuit agrees habeas bail determinations are appealable collateral orders under the standard set out by the Supreme Court in Cooper's and Libran v. Livesay, and this court's decision in Woodcock v. declined to review habeas bail orders on direct appeal conflicts with Cooper's and is no longer good law. Under Cooper's, an order is appealable under the collateral order doctrine if it meets three requirements. One, it conclusively determines the disputed question. Two, it resolves an important issue separate from the merits of the action. And three, it is effectively unreviewable on appeal from a final judgment. As at least ten other circuits have since held, bail orders pending habeas adjudication satisfy each of these requirements, and this court has jurisdiction to review them. First, the bail order conclusively determines the question of whether a detainee is eligible for release while their habeas petition is adjudicated. Second, bail orders are severable from the merits of the habeas action. And third, if there's no interlocutory review of a bail denial, the order denying bail becomes forever unreviewable. And this factor is particularly important in this context because the remedy in a habeas action is released from detention, so a final decision on the merits makes the bail issue moot. So if review of the bail issue must await the district court's final habeas decision, the review will be, as the Second Circuit put it, substantially meaningless. And it may take months before the district court enters final judgment, and our clients face serious harm every day they remain detained during the pandemic. And this is made even clearer by the fact that two of our clients have contracted COVID-19 in the time since the original bail determinations were made. So this court must have interlocutory jurisdiction over their appeal so that the appeal is not substantially meaningless. And it's also important to note in this case that the government initially filed its own notice of appeal requesting this court's review of multiple of the district court orders granting bail. So at that time, the government either recognized that this court has jurisdiction over the And in other similar cases, the government has taken the position that there is jurisdiction over habeas bail appeals. And for these reasons, this court should hold that it has jurisdiction over the direct appeal. Thank you. If there are no questions, Mr. Ahmed will proceed with the rest of our argument. Yeah. Ms. Quigley, you can mute your device at this time, audio and video. And Attorney Ahmed, you can unmute your device and reintroduce yourself on the record, please. May it please the court, Samir Ahmed on behalf of the petitioner's appellants. I'm reserving two minutes for rebuttal. You're requesting. Requesting, Your Honor. Sorry, Ms. Quigley. Yes, you may have it. Thank you. I apologize. This court should reverse or vacate the district court's orders denying bail to our clients for two main reasons. First, the district court erred when it failed to release our clients on bail, even though it found they met the habeas bail standard, that they are likely to succeed on the merits of their habeas claim or exceptional circumstances warrant their release. Second, the district court erred by failing to provide any statement of reasons for the denial of our clients' bail applications. I'd like to address both these errors in turn. First, under Woodcock and Glynn, a habeas bail petitioner is entitled to release either if they can demonstrate that they're likely to succeed on the merits of their habeas claim or exceptional circumstances warrant their release. Here, the government concedes. The district court found both. The government was likely deliberately indifferent to a substantial risk of serious harm to their health while detained at Bristol. How are they likely to proceed at this point? I mean, what good would it be sending it back given what seems to now be undisputed as to the change scenario? Your Honor, we significantly dispute the current facts on the ground at Bristol County. While even though that there is a lower level of confinement currently, Judge Young has made no finding that that level of confinement is acceptable. Do you dispute they were all offered the vaccine? Your Honor, I here cannot make any statement regarding whether or not they were offered because there's nothing in the district court record that explains... Counsel, sometimes facts develop that are obvious to all counsel and the parties while the case is on appeal that can affect or moot an appeal even. And so I'm not asking you, I know it's not in the record because it's after you appealed, but it's been represented to us that they were all offered the vaccine. Are you disputing that? Yes, sir. We'll send it down for factual findings to see what facts support your dispute. Yes, Your Honor. If you think that the vaccine is relevant, we do believe that... No, counsel, wait a minute. You are the one representing your clients. Are you disputing the government's assertion that they were offered the vaccine? As I read your most recent filing, you were not disputing that. You were simply saying that they had good reason to not accept the vaccine and that the House of Correction had failed in some obligation to provide them with more education about it. So let's go back. Are you disputing that they were, in fact, offered the vaccine? Yes, Your Honor, because I don't know exactly what was communicated to my clients. I don't know what language it was communicated to them. I don't know what they understood and I don't... That's different than the question I asked you. And one of your obligations as counsel is to accurately represent the facts to us. Your Honor, I understand that the government made an offer of the vaccine to our clients. The issue and what I'm concerned about, and if this court thinks that the offering of the vaccine is relevant, then we believe that the court should remand to make certain findings because we do not understand... Our clients may not understand what was offered to them in what language. Also, they have significant concerns about the vaccine regarding vaccine hesitancy as well as the significant distrust that they face in the facility. Mr. Ahmed, this all plays into what my fundamental question is. I think it is inconsistent for you to argue that there is, on the one hand, that your clients have a likelihood of success on the merits and to acknowledge, on the other hand, that the facts on the ground have changed and have changed in a material way. We have this question of the vaccine offer and what was said and done in connection with it. We have what appears to be a significant change in the levels of confinement and so on and so forth. So how can you make a claim of likelihood of success? I understand how you can ask that we remand for further fact-finding, but I'm puzzled by your claim of likelihood of success. Your Honor, that's based on the fact that Judge Young has not reconsidered that likelihood of success on the merits decision. I agree with you, Your Honor. He quite probably hasn't considered it because of the tendency of this appeal. I agree with you, Your Honor, and therefore, at the very least, we would request a remand back to the district court to make certain findings, including the likelihood of success on the merits finding, including any findings regarding the vaccine. I have reserved two minutes for rebuttal and I'm happy to address further arguments at that time. Here's the practical point that we're trying to get at and we probably haven't been clear enough, but you achieved a remarkable success in the district court on behalf of a large group of clients getting very substantial relief across a pretty broad spectrum. The passage of time has now kind of pocketed that release for you, but now when you're keeping it alive, even when the facts appear to have changed and you have a right to raise these issues, if you'd like, you may end up leading to a place that then forces people to opine on the results you've got so far and rebalancing what has happened so far. Your Honor, as a practical matter, when you look at how things were on the day you filed suit and how the days and how they now stand now, it appears that you're sort of grasping at straws, trying to hold on an extended, more extraordinary form of the relief you got that could start putting in peril the relief you got. Your Honor, I only represent these petitioner appellants on appeal who are denied bail and they have a live claim and they want to be on bail pending final adjudication. That may be, but if I may, there is such a thing as snatching defeat from the jaws of victory and conditions have now changed and as Judge Selye pointed out to you, the pursuit of this appeal concerned with conditions of close to a year ago may in fact be an impediment to your addressing any remaining claims you have in the district court. I recognize that, Your Honor, but in recent weeks, six individuals, immigration detainees, have tested positive for COVID, including two to three of our clients. We do not believe that even under the current conditions, under the low levels of confinement, that they are safe at Bristol. We do think that the law allows them, based on the errors the district court made at the time it adjudicated these bail applications, they are entitled to release on bail, at least pending final adjudication of their merits. Let me ask you that. Which two are you talking about of your clients have contracted COVID? Um, Your Honor, I think in a public hearing, we didn't want to release our client's serious health conditions, but we're more than happy. I think it's in a sealed filing with the court to let you know which two to three have contracted COVID. How do they possibly now have a claim? Well, Your Honor, I think then that demonstrates that the government has been deliberately indifferent to a substantial risk of their harm, and they should be released under habeas. How does that give them, if they've already, as I understand it, the basis for seeking an injunction or order of their release was that they might get COVID in the conditions in the jail. If unfortunately they now have already contracted COVID, then how do you possibly get that injunctive relief? Your Honor, in our supplemental brief, we explained that individuals can recontract COVID and can get even sicker potentially at a later date. Other courts have also found that even if a petitioner has contracted COVID, it should not disqualify them for later release. And so for even those individuals who have contracted COVID, we do think that there is a live claim here. Anything else? No, I've reserved two minutes for rebuttal. Thank you, Your Honor. Attorney Ahmed, you can mute your device at this time. And Attorney Parascandola, if you would unmute your device and introduce yourself on the record, you may begin your argument. May it please the court, Christina Parascandola for the United States. Before I begin with argument, I have three updates for the court. These are updates since the parties filed supplemental briefing on February 19th. First of all, one of the appellant petitioners has been released from ICE custody and is no longer at Bristol. That's Keith Garfield Williams, who was released on Thursday, February 25th. With this update, then the field of appellants and petitioners in this appeal is four. And this case is moot with regard to eight of the original 12. Let me ask you the flip side of that. Since opposing counsel is hesitant to agree or stipulate anything, then isn't it correct that the proper step for us is to remand this for the district court to make some fact finding that appears obvious but is not undisputed at this point? Unless both counsel are agreeing that something's happened, how can we make a finding? Your Honor, the court's review respectfully is limited to the record that was before the district court when it issued these decisions to deny bail. And these decisions were issued on April 21st, 22nd, 23rd, and 28th, 2020. So again, we have to look at the record before the district court at that time. But if the conditions have changed materially, including but not limited to the release of certain of the appellants, wouldn't it be an that might never recur? Wouldn't it be a far more efficient use of judicial and legal resources to remand and get an updated record and a more current version of what's really happening at the House of Correction? Yes, Your Honor. The government would agree that these findings should be presented to the district court first to decide in the first instance, you know, whether conditions have changed and how so and what the remedy should be. And so, yes, the government agrees that this is something that all of these issues should be brought to the district court first, not this panel. Okay. If I can go back, I did not understand there to be any issue about Mr. Williams being released. So you said there were three updates. What are the other two? Your Honor, last week, Bristol County House of Correction offered all of the detainees the COVID-19 vaccine again. So for those who accepted it on January 21st, this would be their second dose. For those who did not accept it then, this would be their first dose. I do not have yet the numbers of those who accepted or refused it. And I can provide that in supplemental briefing to this court. No, just tell us. And so the update is that the vaccine was offered last week. The third update I have today is that since January 29th, eight of the detainees, the current class members, have tested positive for COVID-19. When we submitted our supplemental brief on February 19th, I reported that there had been seven. So there are eight. And this is all reported on ICE's website. It's a matter of two that had tested positive since January 21st. And they are still in detention and they are not presently scheduled to be removed. Is that correct? That is correct. And I should add they are in isolation and quarantined and the necessary measures are being taken. And the population is so small now in this facility that everyone has their own room. Okay. And I'll proceed to the argument. And just to reiterate, before the court are four orders issued in April 2020. And so the court's review should be based on the record before the district court at that time. Importantly, the district court had to act quickly and carefully based on what was known at that time. And these bail denials were part of a larger scheme that the district court sculpted in which it admitted 43 other detainees. Counsel, I can understand that you want to say, look, there was no error at the time it was issued these four orders. And there certainly is no appellate jurisdiction by way of mandamus. There are other remedies available. But we keep thinking, why is this case in front of us given all of the changed conditions? And I think what I'm hearing from both sides is an agreement that the matter should simply be remanded in light of change conditions to see what, if anything, is left of these claims. Apart from the question of whether there is appellate jurisdiction. But I don't want to mischaracterize the government's position here. So what is the government's position? Your Honor, the government's position is that the appeal to the extent that the appellants seek review of the bail denials issued in April 2020, because those are not appealable orders under this court's precedent. And with regard to the mandamus petitions, the court should deny on the merits because petitioners have not All right. But what about, don't we have an obligation if a case has become moot? Don't we have an obligation to explore that first before we consider anything else? Because it goes to our jurisdiction. Yes, Your Honor. And the government's position is that this appeal and the mandamus petition are now moot with regard to eight of the petitioners who are no longer in custody. But that brings us back to the need to remand, to pin down the facts, to determine. And we do that sometimes in exploring movements. We will retain jurisdiction, remand for certain findings, and then see what to do. Your Honor, I think all roads are leading to Rome here. We agree that this is really something that should have been presented to the district court first, you know, conditions had changed with the vaccine and the recent COVID cases. So I was a little astonished to have the government say, well, part of the case is moot. There's a very good argument that the whole case, both appeals, petition for mandamus and habeas appeal are moot because of change conditions, and that if there's anything left of the case, it ought to go back to the district court. Now Judge Young has said as to prison condition cases, the more usual method of attacking them is a 1983 claim. I don't know if the matter were to go back. The petitioners here would then assert that as to the vaccinations, more education needs to be done in the nature of a 1983 claim. We don't know, Your Honor. Again, our position is that the petitioners should have presented this first to the district court. As Judge Selye said, well, they took an appeal and the only thing they brought back to the district court was for these guys that they now ought to be released on bail because of change conditions. And they complain that even as to that, Judge Young didn't really state a reason, although our law is quite clear that when the reason is self-evident from the record, these are people who committed quite bad offenses. They have quite a bad criminal history record. It's pretty obvious that a finding could be made that they would be a risk to the community, perhaps more so now that they can transmit COVID, or they were a flight risk. So, I'm not certain, really, what is left of this matter. Your Honor, the government agrees there is probably nothing left. Counsel, let me explore Judge Kayada's suggestion a moment. If we were to retain appellate jurisdiction and remand to the district court in order to update the record and take account of all these various changed conditions, would you be prepared to, or could you give us an idea of what the government thinks that order of remand should look like? Your Honor, I could submit supplemental briefing with that remand order. That's a reasonable request, and I suppose, well, I'll ask Mr. Ahmed when he gets up for rebuttal. Okay. Anything else? Nothing from me, Your Honor. Okay. Thank you, Attorney Paraskandola. You can, at this time, mute your device. And, introduce yourself back on the record. Thank you, Your Honor. Samir Ahmed, based for Petitioner's Appellants. Mr. Ahmed, yeah. Could you address my question that I just asked to your sister counsel? If it were our determination to retain appellate jurisdiction, but remand in order to update the record and take account of these changed conditions, could you also, through a supplemental brief, if we wanted it, provide us with the plaintiff's idea of what the district court should do on remand? Yes, Your Honor. And, even now, I think the district court should, on remand, determine have our clients, do they still meet the habeas bail standard for relief, exceptional circumstances, or likelihood of success on the merits, and to take into consideration any other considerations, including the current level of confinement, the offering of the vaccine. These are issues that, Your Honor, we dispute. The fact that now the government's reported that eight individuals have tested positive. There's only 16 people currently in there. We also dispute their representation that every single person has their own room. A client contacted us last week that he was still being roomed with more individuals. I think, Your Honor, it's the fact that apparently over 70% of Bristol County staff themselves have refused to take the vaccine. I think a simple order that just says this appeal is moot, or there's no danger. Mr. Ahmed, Judge Celia is giving you an opportunity, suggesting that you might want an opportunity to brief for us, and I would put a seven-day limit on each of you, exactly what issues should be remanded. Wouldn't you prefer to do that in your written submission, rather than off the top of your head? Yes, Your Honor, we would be more than happy within seven days to submit a supplemental brief explaining what we would like this court to remand to the district court to make certain findings. Okay, and not just a brief. Both of you are talking about briefs. You can file briefs, not to exceed 15 pages, but such briefs should contain a draft order. That's for each of you. Simultaneous filing, and then you have five days thereafter to file any objections. Thank you, Your Honor. Could I make one last point regarding our client's criminal histories? The reason why we think that it isn't evident on the record that they're dangerous to the community is because Judge Chung acknowledged one individual who had served a 20-year cocaine sentence, another individual who had multiple assault convictions. We do believe that there should be an equal protection claim because, in your view, he released similarly situated people. He, therefore, has to release these people. No, Your Honor. I think at the very least, he just needed to make certain findings as to why our clients were dangerous to the community. Okay, then put that into your proposed order. I will. Thank you very much, Your Honor. I have nothing further unless the court does. No. Any further questions from my colleagues? No. No. Thank you very much. Thank you very much. Take care. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.